[No. A058721. First Dist., Div. Five. May 19, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH BELLIZZI, Defendant and Appellant.

## COUNSEL

Colleen M. Rohan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christopher Grove and Tyler R. Meade, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, P. J.**—Appellant Joseph Bellizzi contends the trial court erred in denying his motion to suppress evidence, in this prosecution for possession of cocaine for purposes of sale. (Health & Saf. Code, § 11351.) We conclude the trial court wrongly found exigent circumstances supported the legality of the warrantless search. We, therefore, reverse.

### I. FACTS AND PROCEDURAL HISTORY

Appellant, a resident of Hawaii, checked into the Radisson Hotel in South San Francisco, paying cash in advance. He refused to allow maids into his room to provide maid service. When a maid did finally enter in order to clean up the room while appellant was out, she found among the bedclothes some clear plastic baggies with a white substance inside. The maid informed the hotel management, which informed the local police.

The police contacted a deputy district attorney, who apparently thought there was an insufficient basis for securing a search warrant, and who

suggested the officers should simply investigate and contact appellant to discuss the situation. The officers also contacted police in Hawaii, who told them that appellant was a suspected drug dealer.

Two plainclothes officers, including Officer McCool, then went to the hotel. After discussing the matter with the hotel management, the officers decided that the hotel's head of housekeeping should accompany the officers to the room and should knock on the door to make contact with appellant, while the officers stayed out of sight in the hallway. The officers would then discuss the matter with appellant. The officers also obtained a key to a nearby room from which they could observe appellant's room until he emerged, in the event appellant refused to open his door.

The head of housekeeping knocked on the door. Appellant asked who was there, and the woman responded, "housekeeping." Appellant opened the door a bit on the chain and looked out at the head of housekeeping without saying anything. Then he closed the door. There was a silent interval. It appeared that appellant was refusing to open the door, so the woman and the officers began to leave.

Then appellant suddenly swung the door completely open. Officer Mc-Cool moved back to the doorway. He had also drawn his gun. Appellant saw the plainclothes officer and his drawn gun. Appellant put his arms over his head and began yelling words like "Oh, no. Oh, Shit. Oh, God." Appellant also moved back into his room and started to close the door.

Officer McCool followed appellant back into the hotel room with his gun drawn, while identifying himself as an officer, and detained appellant. Scattered around the room in plain view were baggies containing a large amount of cocaine, as well as drug paraphernalia, but no gun.

Appellant was arrested and charged with possession of cocaine for purposes of sale. Appellant made a motion to suppress the evidence gathered in his hotel room. The court denied the motion. Appellant then negotiated a disposition under which he entered a plea to one count of possession for purposes of sale, while preserving his right to contest the legality of the search on appeal. The trial court imposed a four-year prison sentence, and appellant filed an appeal.

No opening brief on appeal was filed, and we dismissed the appeal. Appellant secured new counsel and filed a motion to recall the remittitur and reinstate the appeal, which we granted.

## II. DISCUSSION

■ We conclude we must reverse the trial court's ruling. The warrantless entry into appellant's hotel room cannot be justified on the basis of exigency, because any exigency here was created by the law enforcement officer who burst into appellant's room in plain clothes with gun drawn, in what objectively appeared to be a robbery or other attack on appellant. When appellant responded fearfully and by retreating, this reaction to an apparent robbery attempt, objectively viewed, cannot justify the warrantless entry. Although we are reluctant to reverse a conviction which was apparently well deserved, we may not ignore the violation of appellant's rights under the Fourth Amendment demonstrated by this record.

We are required to independently review the trial court's legal conclusion that exigency justified the warrantless entry. (See *People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].) After independent review, we cannot agree there was a proper justification for warrantless entry based upon exigency.

When the officers approached the door to appellant's room, there was no exigency. The officers resorted to a ruse with a hotel employee in order to get the door open, then observed appellant go into a panic at the sight of an armed stranger in plain clothes, rather than the employee he had expected. While the officers might at that point have justifiably feared appellant might attempt to defend himself, with a gun or otherwise, this exigency was created by the officers themselves.

The facts of this case are similar to those in Presiding Justice Roth's opinion in *People* v. *Rodriguez* (1981) 123 Cal.App.3d 269 [176 Cal.Rptr. 798]. There, police officers suspected drug activity was taking place in an apartment. Instead of securing a warrant, the police went to the door to investigate, used a ruse to get the door open, and burst in upon the occupants. (*Id.* at pp. 270-273.) While the People attempted to justify this warrantless entry based upon a claim of emergency or exigency, the emergency did not arise until the police created it: "Here, however, as appellant correctly noted below, the officers did not claim that their decision to force a confrontation at the subject apartment was based upon any emergency concept or, for that matter, that they even intended to, or believed they had cause to, search that apartment or to arrest anyone that might be within. To the extent that their actions created an emergency it was of the ' "do-it-yourself" variety' condemned in *People* v. *Shuey* (1975) 13 Cal.3d 835, 849. . . ." (*Id.* at p. 272.)

We are mindful of the fact that federal, not state law, principles are controlling here. (See *In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) However, no decision of the federal Supreme Court or the federal courts of appeal has yet endorsed the theory that plain-clothes policemen may burst in upon an occupant with guns drawn, and justify the entry based upon a claim of exigency arising from the possibility thereafter of armed resistance or flight. The federal appellate decisions are to the contrary. (See, e.g., *United States* v. *Alvarez* (9th Cir. 1987) 810 F.2d 879, 880-882 [Exigency did not justify warrantless entry into hotel rooms to arrest suspected cocaine smugglers.]; *United States* v. *Munoz-Guerra* (5th Cir. 1986) 788 F.2d 295, 297-298 [Law enforcement agents could not create their own exigency by knocking on the door and announcing their presence.]; *United States* v. *Blake* (9th Cir. 1980) 632 F.2d 731, 733-734 [Claimed exigency did not justify warrantless forcible entry into a home.].)

The People cite Justice Baxter's opinion in *People* v. *Dyke* (1990) 224 Cal.App.3d 648, 660-661 [274 Cal.Rptr. 66] (*Dyke*); but the citation of this case, in which exigent circumstances *did* exist, only highlights the absence of exigency here. In *Dyke*, the police went to a motel room with a valid arrest warrant for a fugitive who was reasonably suspected to be inside. When the police knocked on the door, a gun was visible inside the room within reach of the occupant. The officers entered solely to secure the gun, and observed other evidence in plain view. (*Dyke*, *supra*, 224 Cal.App.3d at pp. 654-655.) As Justice Baxter noted, the police were on a legitimate mission where time was of the essence, the arrest of a fugitive pursuant to a valid arrest warrant. They had no reason to suspect contraband was inside the motel room, and the entry was limited to preventing the occupant from reaching for and using the gun visible to them. (*Id.* at pp. 660-661.) Those facts stand in sharp contrast to the facts here, in which the police suspected there was contraband inside, had no warrant, and simply burst in through the open door instinctively.

We take no pleasure, obviously, in reversing this conviction, especially because it appears the police did, in fact, have sufficient evidence to approach a magistrate for a search warrant. However, the plainclothes officer's warrantless entry here, in simply bursting through the door with gun drawn, was unreasonable, in violation of the Fourth Amendment, and not supported by any exigency except that created by the officer's own actions.

## III. Disposition

The judgment of conviction is reversed. The matter is remanded to the trial court with instructions to grant the motion to suppress.

King, J., and Haning, J., concurred.